1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DAMIAN B. MONTANO, | ) | CV F 04-5993 AWI WMW HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND |
| | ) | RECOMMENDATIONS RE |
| v. | ) | PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS |
| | ) | |
| DIRECTOR, CALIFORNIA DEPT. OF | ) | |
| CORRECTIONS, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| _____ | ) | |

Petitioner is a prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. Section 2254. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72-302.

**PROCEDURAL HISTORY**

On July 5, 2000, an information was filed in Stanislaus County Superior Court

charging Petitioner with two felony counts of driving under the influence of alcohol.  Cal.

Veh. Code Section 23152, subds. (a) & (b).  Both counts alleged that Petition had previously

been convicted of three DUIs within seven years.  Cal. Veh. Code Section 23550.   It was

further alleged that Petitioner had previously been convicted of four serious and violent

felonies within the "Three Strikes" law (Cal. Pen. Code Section 667(d)), and had served four

prison terms (Cal.  Pen. Code, Section 667.5(b)).  On November 9, 2001, Petitioner filed a

motion to dismiss due to "governmental misconduct."  On December 6, 2001, the trial court

denied the motion after conducting an evidentiary hearing.

On October 28, 2002, Petitioner waived his right to a jury trial and submitted the

charges on the police report, and the allegations on documentary evidence.  The trial court

found him guilty of the charges and found the allegations true after the prosecutor struck on

of the prior prison term allegations.

On December 13, 2002, the trial court denied Petitioner's application for relief under

California Penal Code section 1385 and People v. Superior Court (Romero), 13 Cal.4th 497

(1996).  The court sentenced Petitioner to 28 years to life on count one.  The court stayed

count two pursuant to California Penal Code section 654.

Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate

District.  The Court of Appeal affirmed Petitioner's conviction in an unpublished opinion

entered February 19, 2004.  Petitioner filed a petition for review with the California Supreme

Court, which the court denied on May 12, 2004.

Petitioner has not filed a petition for writ of habeas corpus with any state court.

Respondent concedes that Petitioner has exhausted the claims in the present petition by

presenting those claims in the California Supreme Court.

**LEGAL STANDARD**

JURISDICTION

Relief by way of a petition for writ of habeas corpus extends to a person in custody

2

1   pursuant to the judgment of a state court if the custody is in violation of the Constitution or

2   laws or treaties of the United States.  28 U.S.C. § 2254(a);  28 U.S.C. § 2241(c)(3);  Williams

3   v. Taylor, 120 S.Ct. 1495, 1504 fn.7 (2000).  Petitioner asserts that he suffered violations of

4   his rights as guaranteed by the United States Constitution.  In addition, the conviction

5   challenged arises out of the Stanislaus County Superior Court, which is located within the

6   jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly, the court has

7   jurisdiction over the action.

8         On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty

9   Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after

10  its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,*

11  522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997)

12  (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107,

13  117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117

14  S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).

15  The instant petition was filed on July 21, 2004,  after the enactment of the AEDPA, thus it is

16  governed by its provisions.

17  STANDARD OF REVIEW

18        This court may entertain a petition for writ of habeas corpus "in behalf of a person in

19  custody pursuant to the judgment of a State court only on the ground that he is in custody in

20  violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

21        The AEDPA altered the standard of review that a federal habeas court must apply

22  with respect to a state prisoner's claim that was adjudicated on the merits in state court.

23  Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for

24  habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision

25  that was contrary to, or involved an unreasonable application of, clearly established Federal

26  law, as determined by the Supreme Court of the United States;" or "resulted in a decision

27

28                                3

that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); <u>Lockyer v. Andrade</u>, 123 S.Ct. 1166, 1173 (2003) (disapproving of the Ninth Circuit's approach in <u>Van Tran v. Lindsey</u>, 212 F.3d 1143 (9th Cir. 2000)); <u>Williams v. Taylor</u>, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." <u>Lockyer</u>, at 1174 (citations omitted). "Rather, that application must be objectively unreasonable." <u>Id.</u> (citations omitted).

A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. <u>Coleman v. Thompson</u>, 501 U.S. 722, 731, 111 S.Ct. 2546, 2554-55 (1991); <u>Rose v. Lundy</u>, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203 (1982); <u>Buffalo v. Sunn</u>, 854 F.2d 1158, 1163 (9th Cir. 1988).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. <u>Picard v. Connor</u>, 404 U.S. 270, 276, 92 S.Ct. 509, 512 (1971); <u>Johnson v. Zenon</u>, 88 F.3d 828, 829 (9th Cir. 1996). A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S.Ct. 887, 888 (1995) (legal basis); <u>Kenney v. Tamayo-Reyes</u>, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis).

When the California Supreme Court's opinion is summary in nature, this court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. <u>See</u> <u>Ylst v. Nunnemaker</u>, 501

4

U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under § 2254(d)(1)).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

**DISCUSSION**

Denial of Motion to Dismiss

Petitioner contends that the trial court's denial of his motion to dismiss based on "governmental misconduct" violated his federal constitutional rights to privacy, counsel and due process of law.  The Court of Appeal explained the factual background of this claim as follows:

> Alan V. Peacock is a licensed private investigator, who formerly was employed by the Modesto Police Department.  Approximately 99 percent of his business is performing investigations for defendants facing criminal charges.  He may be appointed by the court or retained by attorneys representing the defendants.
> Peacock also was appointed by the court to administer the estate of Raymond Aho.  The district attorney's office was investigating Peacock for possible fraud in connection with the estate and obtained a search warrant authorizing the district attorney to seize Peacock's file on the estate, all financial records relating to the

5

estate, and all of Peacock's computers.

Peacock was present when the search warrant was served and executed at his office. He knew the officers executing the search warrant and assisted them in locating various items listed in the warrant. As pertinent here, both of his computers in his office were seized, along with apparently over 100 floppy disks. It was undisputed that there was information on Peacock's current and past investigative assignments on the hard drive of the computers and on the floppy disks. The officers and Peacock then proceeded to Peacock's house, where his home computers were seized.

Attorneys who retained Peacock to perform investigative work understandably became upset when they learned of the search. An order was obtained from the court requiring the district attorney to turn over to the court all seized items. The computers and disks were turned over to the court on the afternoon following the seizure. A special master was appointed to review the material.

Montano, and several other defendants in a similar position, moved to have their informations dismissed because of the perceived misconduct by the district attorney in executing the search warrants and seizing Peacock's computers. There were three primary arguments advanced in support of the motion.

First, Montano contended that the investigation of Peacock was a pretext, and the real motive for the search was to discover privileged material. He alleged that Peacock's computer contained information about his case that was protected by either the attorney-client or the attorney work-product privileges. This assertion was not contested by the district attorney and was accepted by the trial court.

Montano then alleged that since the district attorney had the computers in his possession for a little over 24 hours, someone either must have reviewed this protected information or made a copy of it for later review. The district attorney presented testimony that no computer files had been reviewed and that all copies of the information on Peacock's computers had been turned over to the court.

Second, Montano alleged that officers had reviewed protected information while executing the search warrant. . . .

Third, Montano alleged that after Peacock and the detectives left his office, someone from either the police department or the district attorney's office remained behind and searched the office, in violation of the search warrant. . . .

The trial court denied the motion to dismiss the information, finding that the parties to the search acted in a professional and cooperative manner and there was no evidence that the district attorney, or anyone acting on his behalf, obtained any privileged information as a result of the search. A writ to this court was denied. (<u>Montano et al. v. The Superior Court of Stanislaus County</u> (May 16, 2002, F040295).

Unpublished Opinion in case no. F042121, filed February 19, 2004, 3 - 5.

On appeal, Petitioner claimed that the district attorney had committed misconduct because he obtained privileged information. He also claimed that there was misconduct because the district attorney failed to obtain a special master. The Court of Appeal found as to the first argument that while there was merit to the contention that the district attorney had privileged information in his possession, there was no evidence that anyone had reviewed

6

that information on behalf of the government.  Therefore, the Court of Appeal concluded that there was no misconduct.  As to Montano's argument that the district attorney was required to obtain a special master, the Court of Appeal found that the district attorney was not required to comply with the statute cited by Montano.

Petitioner has failed to carry his burden of showing that the adjudication of this claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).  While Petitioner cites his right against self-incrimination, he presents no basis for challenging the trial court and Court of Appeal's conclusion that no one had reviewed the information on behalf of the government.  Petitioner's mere scepticism on this point does not amount to evidence to challenge the Court of Appeal's conclusion.  Accordingly, the court concludes that this claim presents no basis for habeas corpus relief.

Imposition of 28 Years to Life Sentence

Petitioner contends that the imposition of a sentence of 28 years to life for a misdemeanor was grossly disproportionate under the Eighth Amendment.  He stresses that he will not be eligible for parole for 25 years.  Respondent disputes this contention.

A criminal sentence that is not proportionate to the crime for which a defendant is convicted may indeed violate the Eighth Amendment.  The constitutionality of a 25-to-life sentence for nonviolent recidivists is controlled by several decisions rendered by the Supreme Court.  Andrade v. Attorney General of the State of California, 270 F.3d 743 (9th Cir. 2001).  For purposes of the Antiterrorism and Effective Death Penalty Act (AEDPA), the cases of Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133 (1980); Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001 (1983), and Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680 (1991), are clearly established federal law governing the application of the Eighth Amendment to

such sentences. Id. at 766.

Pursuant to this line of cases, the court must first compare the harshness of the penalty to the gravity of the offense to determine whether the sentence raises an "inference of gross disproportionality." Id. at 755-759.  If such an inference is raised, the court then must proceed to analyze the sentences imposed on other criminals in the same jurisdiction, and the sentence imposed for commission of the same crime in other jurisdictions. Id.  The second and third factors need not be considered if the court concludes under the first factor that a defendant's sentence does not raise an inference of gross disproportionality to the crime. Id. at 759.  Only if the state court's proportionality analysis is "contrary to or involves an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," may the federal court grant habeas corpus relief. Id. at 766.

In Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133 (1980), the Court upheld a life sentence imposed under a Texas recidivist statute for a defendant convicted of obtaining $120.75 by false pretenses, an offense normally punishable by imprisonment for two to ten years. Rummel v. Estelle, 445 U.S. 263, 266, 100 S.Ct. 1133, 1135 (1980).  However, because he had two prior felony convictions (for fraudulent use of a credit card and passing a forged check), and had served two prior prison terms, the prosecution chose to proceed under the state's recidivist statute, which carried a life sentence.  Id. The Supreme Court held that Rummel's sentence of life imprisonment *with* the possibility of parole did not violate the Eighth Amendment. Id. at 365-266, 100 S.Ct. at 1135. (emphasis added).   The Court noted that Rummel had suffered two separate convictions and terms of imprisonment for each prior, that he would be eligible for parole in twelve years, and that under the Texas recidivist statute, prosecutors retained the discretion not to invoke the statute for "petty" offenders. 445 U.S. at 278-81, 100 S.Ct. at 1141.

Three years later, the U.S. Supreme Court set forth the criteria for finding a sentence to be cruel and unusual punishment under the federal Constitution and affirmed a decision of

8

the Eighth Circuit holding unconstitutional a sentence of life imprisonment without the possibility of parole for a seven-time nonviolent felony recidivist. Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001 (1983).   Applying the proportionality criteria, the Court concluded that Solem's sentence was grossly disproportionate to his crime of uttering a "no account" check for $100.00, even in light of his prior six nonviolent felony convictions: three for third degree burglary, one for obtaining money under false pretenses, one for grand larceny, and one for driving while intoxicated. Id. at 279-81, 103 S.Ct. at 3004-5.   The Court emphasized that Solem's life sentence was far more severe than the sentence it had considered in Rummel, because Rummel was likely to be eligible for parole in twelve years, while Solem was given no possibility of parole at all. Id.

In Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680 (1991), the defendant received a mandatory sentence of life in prison *without* the possibility of parole for possession of more than 650 grams of cocaine, his first felony offense.  Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680 (1991) (emphasis added).  The U.S. Supreme Court upheld the sentence, with five justices agreeing, for varying reasons, that the sentence did not violate the Eighth Amendment.  Although the Court did not produce a majority opinion, seven justices favored some manner of proportionality review.  Justice Kennedy, joined by Justices O'Connor and Souter, stated that a noncapital sentence could violate the Eighth Amendment if it was "grossly disproportionate" to the crime, but concluded that courts need not examine the second and third factors of intrajurisdictional and interjurisdictional reviews discussed in Solem, unless "a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Id. at 1005.  The Ninth Circuit, adopting Justice Kennedy's concurring opinion in Harmelin, now refers to the test articulated as "the rule of Harmelin."  Andrade v. Attorney General of the State of California, 270 F.3d 743, 756 (9th Cir. 2001).

The majority of the justices in the Harmelin court agreed that outside capital

punishment, deeming a sentence cruel and unusual punishment is "exceedingly rare" due to the lack of objective guidelines for terms of imprisonment.  Harmelin, 501 U.S. 957, 964, 111 S.Ct. 2680 (1991).  The threshold for such an inference of disproportionality is high.  See, Id. at 1001, 111 S.Ct. at 2707 (Kennedy, J. concurring).  Generally, so long as the sentence imposed by the state court does not exceed statutory maximums, the sentence will not be considered cruel and unusual punishment under the Eighth Amendment.  United States v. McDougherty, 920 F.2d 569, 576 (9th Cir. 1990).

The Harmelin Court concluded that the defendant's sentence did not meet the threshold factor of "gross disproportionality."  Justice Kennedy stressed the serious nature of Harmelin's offense, stating that the offense "threatened to cause grave harm to society" unlike "the relatively minor, nonviolent crime at issue in Solem."  Harmelin v. Michigan, 501 U.S. 957, 1002, 111 S.Ct. 2680, 2705 (1991).  Justice Kennedy further noted that the "possession, use, and distribution of illegal drugs represent 'one of the greatest problems affecting the health and welfare of our population.'" and that the quantity of cocaine possessed by Harmelin had a potential yield of between 32,500, and 65,000 doses.  Id.

In the present case, the Court of Appeal discussed the above cases and analyzed Petitioner's Eighth Amendment claim as follows:

> The most we can draw from these cases is the gross disproportionality principle first espoused in Harmelin.  We conclude that this is not one of those exceedingly rare cases in which the principle applies.  Montano's conviction is much more serious than the thefts in Andrade or Ewing because it creates a substantial risk of injury to everyone on, or near, the roadway on which Montano was driving.
>
> Montano also has a long criminal history.  He had three prior convictions for driving under the influence (Veh. Code, § 23152), all within a three-month span in 1994.  He also was convicted of two counts of burglary of an inhabited dwelling (§ 459), rape (§ 261, subd.(a)(2)), attempted grand theft (§§ 487, 664), false imprisonment (§ 236), and assault with the intent to commit rape (§ 220).  Montano has been in and out of prison since 1976 and has violated parole at least seven times.
>
> Montano does not compare favorably to any of the defendants in the cases discussed above.  His case differs from Solem, the case on which he places the greatest reliance, because his prior convictions include violent offenses.  There have been few years since 1976 that Montano either was not incarcerated or convicted of committing an offense or parole violation.  This criminal history conclusively establishes that he cannot, or will not, comply with the laws of this state.  The three strikes law was enacted to protect the public from repeat offenders such as Montano.

10

His sentence is not cruel and unusual under the Eighth Amendment.

Even if we were to proceed to a comparison of sentences in this and other jurisdictions, Montano has failed to establish a hint of unconstitutionality. Montano's intrajurisdictional comparison fails because it focuses on a defendant with no criminal history who commits one crime. This failure deprives the argument of any persuasive value. Montano fails to provide any interjurisdictional comparison, thus conceding that this factor does not favor his argument.

Unpublished Opinion in case no. F042121, filed February 19, 2004, 17.

The court finds that Petitioner has failed to carry his burden of showing that the adjudication of this claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). To the contrary, the Court of Appeal analyzed Petitioner's claim under clearly the established Federal law set forth above, and Petitioner has demonstrated no defect in the Court of Appeal's application of that law to his case. Accordingly, the court finds that this claim provides no basis for habeas corpus relief.

Based on the foregoing, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be DENIED and that judgment be entered for Respondent.

These Findings and Recommendation are submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file

11

objections within the specified time may waive the right to appeal the District Court's order.

Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    September 19, 2006**          **/s/  William M. Wunderlich**
mmkd34                                    UNITED STATES MAGISTRATE JUDGE

12